
**FILED**

**August 14, 2015**

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

**Time: 1:15 PM**



## COURT OF WORKERS' COMPENSATION CLAIMS
## IN NASHVILLE

| | |
|---|---|
| Tommy Thurmond,<br>                    Employee,<br>v.<br><br>Yates Services,<br>                    Employer,<br>And<br><br>Travelers Insurance,<br>                    Insurance Carrier. | )  Docket No.:  2015-06-0240<br>)<br>)  State File No.: 96769-2014<br>)<br>)  Date of Injury: December 8, 2014<br>)<br>)  Judge: Robert Durham<br>)<br>)<br>)<br>) |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

THIS CAUSE came to be heard before the undersigned Workers' Compensation Judge on July 29, 2015, upon the Request for Expedited Hearing filed by Tommy Thurmond (Mr. Thurmond), the Employee, on June 18, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if the Employer, Yates Services (Yates), is obligated to provide medical benefits and temporary disability benefits. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that Mr. Thurmond is entitled to medical benefits, but is not entitled to temporary disability benefits at this time.

### ANALYSIS

#### Issues

*1.      Whether Mr. Thurmond is entitled to additional evaluation and treatment for his injury and, if so, whether he is entitled to see another doctor for said evaluation and treatment;*

*2.      Whether Mr. Thurmond is entitled to reimbursement for medical expenses he incurred in emergency room visits on May 15 and May 19, 2015; and,*

1

3.     *Whether Mr. Thurmond is entitled to temporary disability benefits following his resignation on February 20, 2015.*

**Evidence Submitted**

The Court admitted into evidence the exhibits below:

1. Medical records from Comprehensive Health Services,
2. Medical records from Concentra Medical Centers,
3. Medical records from Vanderbilt University Medical Center,
4. Medical records from STAR Physical Therapy,
5. Medical records from Results Physiotherapy,
6. Employee/Manager Medical Statement dated December 7, 2014, and,
7. Job Placement Evaluation Report dated December 9, 2014.

The Court designated the following as the technical record:

- Petition for Benefit Determination (PBD), dated May 15, 2015,
- Dispute Certification Notice (DCN), dated June 11, 2015,
- Request for Expedited Hearing (REH), dated June 18, 2015 (with attached affidavit),
- Position Statement of Mr. Thurmond.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments thereto as allegations unless established by the evidence.

The parties stipulated to a compensation rate of $549.83 based on an average weekly wage of $824.75. Mr. Thurmond provided in-person testimony.

**History of Claim**

Mr. Thurmond is a thirty-six-year-old resident of Davidson County, Tennessee. Yates hired Mr. Thurmond on July 29, 2013, to work on the assembly line at the Nissan plant in Smyrna, Tennessee. Mr. Thurmond's job required him to repetitively lift and secure various parts as vehicles passed over his head. On December 7, 2014, while working third shift, Mr. Thurmond began experiencing increasing pain in his neck and shoulders. He called for assistance, but his supervisor, Don Rouse, did not respond until Mr. Thurmond's shift was almost over. Mr. Thurmond finished his shift and went home, but when he awoke to go back to work, he found that he could not lift his arms above his head due to the pain.

Mr. Thurmond immediately reported his condition to Mr. Rouse upon arriving at

work on December 8. Mr. Rouse took him to Comprehensive Health Services (CHS), the health clinic located at the Nissan plant. Mr. Thurmond underwent an initial evaluation and Yates presented him with a C-42 Choice of Physician form. Mr. Thurmond chose Dr. Gilbert Woodall with CHS.

On December 9, Mr. Thurmond underwent an evaluation at CHS by Candace Humes, N.P. Mr. Thurmond complained of severe pain in the right and left sides of his neck as well as in his right shoulder. Nurse Humes noted that Mr. Thurmond had a history of neck pain while working for Yates, with episodes occurring in the fall of 2013 and again in the spring of 2014. (Ex. 1 at 3.) On examination, Nurse Humes noted tenderness, but no swelling. She diagnosed Mr. Thurmond with bilateral trapezius myalgias and a right-shoulder strain and opined that both conditions were "primarily work-related." Nurse Humes placed restrictions of no work above the right shoulder and limited lifting to fifteen pounds. She also prescribed a course of physical therapy. *Id.*

Despite Nurse Humes' recommendation, Yates did not authorize physical therapy for Mr. Thurmond right away. Mr. Thurmond continued to work under restrictions until the plant shut down for Christmas. After the Christmas break, Mr. Thurmond attended his first physical therapy visit on January 6, 2015, with Sarah Williams of Results Physiotherapy (Results). Mr. Thurmond described his pain as a "seven" on a scale of one to ten. (Ex. 5 at 10.) He returned to CHS on January 8. Nurse Humes noted that Mr. Thurmond reported a "60% improvement" in his condition. She restricted Mr. Thurmond's overhead work and instructed him to continue physical therapy. (Ex. 1 at 6.)

Mr. Thurmond continued with physical therapy through January 2015. On January 28, Ms. Williams concluded: "Pt is progressing nicely with AROM, strength, and activity tolerance but is still limited by endurance and dynamic postural stability which affects ability to repeatedly perform overhead activity." (Ex. 5 at 5.) Ms. Williams asked CHS to advise her as to the need for further PT treatment. *Id.*

On February 6, Mr. Thurmond returned to CHS where Dr. Terri Walker evaluated him. According to the report, Mr. Thurmond stated the pain in his neck was "75% better." Mr. Thurmond also said he had no pain in his left shoulder and only intermittent pain in the right shoulder. Dr. Walker ordered x-rays to rule out cervical changes. (Ex. 1 at 8.) The x-ray report revealed a reversal of the normal cervical lordosis, but was otherwise unremarkable. (Ex. 1 at 17-18.) Dr. Walker stated Mr. Thurmond was "practically at MMI" and she returned him to work with no restrictions. (Ex. 1 at 8.) Furthermore, Dr. Walker ordered Results to discharge Mr. Thurmond from physical therapy. (Ex. 5 at 5.)

On February 10, Dr. Woodall with CHS evaluated Mr. Thurmond. Dr. Woodall opined that Mr. Thurmond's right-trapezius strain had resolved. He also noted Mr. Thurmond's x-rays revealed osteoarthritis in his right shoulder, which Dr. Woodall felt

3

was not primarily related to his employment. Dr. Woodall offered to inject Mr. Thurmond's shoulder with steroids, but he refused the offer. Dr. Woodall then released Mr. Thurmond to return to work at full duty with no restrictions. (Ex. 1 at 10.)

Mr. Thurmond testified he attempted to return to regular duties, but he was unable to perform his job without assistance from a co-worker who had been helping him since the injury. He further testified he felt he had no choice but to resign, which he did on February 20.

Mr. Thurmond testified he continued to have pain and spasms in his neck and shoulders, so he filed a PBD seeking additional benefits. Through mediation, Yates agreed to provide Mr. Thurmond with another panel, and Mr. Thurmond chose Dr. Joseph Speake with Concentra to provide authorized care. Dr. Speake evaluated Mr. Thurmond on May 4, 2015. He diagnosed Mr. Thurmond with a cervical and trapezius strain and prescribed pain relievers and a muscle relaxer as well as physical therapy, three times a week for two weeks. (Ex. 2 at 21-23.) However, Dr. Speake did not recommend any restrictions on Mr. Thurmond's activities, despite Mr. Thurmond's request that he do so.

Concentra also provided physical therapy, and therapist Jonathon Thomas evaluated Mr. Thurmond on May 4. (Ex. 2 at 24-27.) Mr. Thurmond underwent therapy on May 5 and May 7. At the May 7 visit, the therapist noted Mr. Thurmond's progress was "slower than expected." (Ex. 2 at 8.) Dr. Speake met with Mr. Thurmond immediately after the May 7 therapy session. According to the note, Mr. Thurmond stated he was a "little better" and the muscle relaxer was helping him sleep at night. Dr. Speake did not note any swelling or muscle spasms or evidence of radiculopathy on examination. However, he also felt Mr. Thurmond was not exaggerating his symptoms. Dr. Speake concluded he could not "justify continuing PT based on amount of PT received in past and current exam." Dr. Speake noted Mr. Thurmond had lingering pain but no functional limitations. He determined Mr. Thurmond was at maximum medical improvement. He advised Mr. Thurmond to continue taking medications and to follow up with Concentra as needed. (Ex. 2 at 5, 6.)

Mr. Thurmond testified his neck pain increased after riding a stationary bike during his last therapy session. He attempted to go back to see Dr. Speake on May 13, but was told by his office that Yates' insurance carrier, Travelers, refused to authorize any additional visits. Mr. Thurmond then went to the emergency room at Vanderbilt University Medical Center (Vanderbilt) on May 15, where Dr. Jordan Rupp treated him. (Ex. 3 at 4-8.)

Dr. Rupp's note states Mr. Thurmond told him his neck pain worsened after riding a "hand bike" two days earlier. He diagnosed Mr. Thurmond's condition as "neck pain" and, after prescribing Ibuprofen and Tylenol, released him to follow-up with his primary-

4

care physician. However, Dr. Rupp also took Mr. Thurmond off work for two days and recommended that he lift no more than five pounds over his shoulders for two weeks. *Id.*

Mr. Thurmond returned to Vanderbilt's emergency room on May 19, and Dr. Michael Johnston provided treatment. Dr. Johnston diagnosed Mr. Thurmond with "neck pain/cervical strain." He did not note any objective signs of radiculopathy. He discharged Mr. Thurmond home, but noted that if he failed to obtain treatment through worker's compensation, he could contact "Mr. Larry Prisco" to arrange follow-up. (Ex. 3 at 1, 2.) Mr. Thurmond received bills from Vanderbilt for the May 15 and May 19 visits in the amount of $397.20 for each visit. (Ex. 3 at 9-12.)

Mr. Thurmond also testified that, following his resignation from Yates, he applied for unemployment benefits. Although contested by Yates, Mr. Thurmond eventually received unemployment benefits from February 20, 2015, through the present.

Mr. Thurmond filed a PBD on May 15, 2015, seeking medical/temporary disability benefits. (T.R. at 4, 5.) The parties did not resolve the disputed issues through mediation and the Mediation Specialist filed the DCN on June 18, 2015. (T.R. at 6-8.)

### Mr. Thurmond's Contentions

Mr. Thurmond contends he is entitled additional medical treatment for his compensable neck and trapezius strain. He further contends he is entitled to select another physician to provide such treatment, since Dr. Speake discharged him from care.

Mr. Thurmond also contends he is entitled to temporary disability benefits from the date he resigned on February 20, 2015, until he reaches maximum medical improvement, given that he only resigned because of his inability to perform the job due to his injury. Finally, Mr. Thurmond asserts he is entitled to payment for his emergency room visits of May 15 and May 19, because Travelers forced him to seek other medical treatment when it refused to authorize any additional treatment with Dr. Speake.

### Yates' Contentions

Yates contends it provided Mr. Thurmond with all the reasonable and necessary treatment required for his work-related injury on December 7, based on the opinions of Drs. Walker, Woodall and Speake. Given that Dr. Woodall and Dr. Walker opined Mr. Thurmond could return to work with no limitations, Yates contends Mr. Thurmond is not entitled to any temporary disability benefits following his resignation. Yates also asserts Dr. Speake opined Mr. Thurmond does not require any further medical treatment for his work-related injury, and as a result, it is not obligated to provide additional treatment. Finally, Yates asserts Mr. Thurmond's trips to the emergency room were neither reasonable nor necessary for treatment of his work-related injury, and it is not obligated

5

to pay for those visits.

## Findings of Fact and Conclusions of Law

### *Standard Applied*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

### *Factual Findings*

Mr. Thurmond is a credible witness. Mr. Thurmond sustained a compensable injury to his neck and bilateral trapezius muscles on December 7, 2014. Mr. Thurmond resigned from Yates on February 20, 2015, after Dr. Woodall released him to return to work with no restrictions. Yates allowed Mr. Thurmond to choose Dr. Speake for additional treatment, but refused to authorize additional visits after Dr. Speake determined Mr. Thurmond was at maximum medical improvement.

### *Application of Law to Facts*

#### *Provision of Medical Benefits*

Tennessee Code Annotated section 50-6-204(a)(1)(A) (2014) requires an employer to provide an employee with "such medical and surgical treatment . . . made reasonably necessary by accident." In order to meet this requirement, the employer must begin by providing the employee with a panel of physicians from which the employee can choose a treating doctor. Tenn. Code Ann. § 50-6-204(a)(4)(A) (2014).

The parties agree that Yates provided an initial panel pursuant to the statute. In fact, Yates provided another panel in response to Mr. Thurmond's initial PBD and allowed Mr. Thurmond to choose Dr. Speake as his treating physician. On May 7, Dr. Speake determined Mr. Thurmond was at MMI and terminated his physical therapy; however, he also advised Mr. Thurmond to return to Concentra "as needed." (Ex. 2 at 5, 6.) Mr. Thurmond tried to return on May 13, but Yates' insurance carrier, Travelers, refused to authorize the visit.

6

The fact that Dr. Speake determined Mr. Thurmond was at MMI does not terminate Yates' obligation to provide medical treatment "made reasonably necessary by accident." Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014). Yates shall authorize such treatment as Dr. Speake determines is reasonable and necessary for Mr. Thurmond's December 7 injury. If Dr. Speake refuses to see Mr. Thurmond again, Yates shall provide another panel from which Mr. Thurmond may choose a treating physician in accordance with Tennessee Code Annotated section 50-6-204(a)(4)(A) (2014).

*Payment of Medical Expenses*

Whether an employee is justified in seeking payment for unauthorized medical expenses from an employer depends upon the circumstances of each case. *Buchanan v. Mission Ins. Co.,* 713 S.W.2d 654, 656 (Tenn. 1986).[1] In *Buchanan,* the Supreme Court concluded that the statute:

> [M]akes it clear that the intent [of the Legislature] . . . was for the employee to certainly do no less than consult his employer before incurring the expenses called for by that statute if the employee expects the employer to pay for it. The opposite would seem to be against public policy.

*Id.* at 657. In addition, the Tennessee Supreme Court has held that when an employee receives medical care for a work-related injury that the employer did not authorize, the employee must establish the necessity and reasonableness of the charges before the employer is responsible. *Moore v. Town of Collierville,* 124 S.W.3d 93, 98 (Tenn. 2004).

Mr. Thurmond's undisputed testimony is that he tried to obtain care from the authorized physician, but Travelers refused to allow it. Given this refusal, the Court finds Mr. Thurmond justified in seeking reasonable and necessary medical treatment on his own. However, Mr. Thurmond has not offered sufficient evidence to establish that the level of care and cost of emergency room visits was reasonable or necessary under the circumstances.

Neither emergency room visit resulted in significant medical treatment other than slight modifications in Mr. Thurmond's medication. (Ex. 3 at 1-6.) Both visits appear to have occurred in the early afternoon. Neither doctor noted any objective findings, nor did they order any studies, treatments or lab work. *Id.* The only meaningful consequence of the emergency room visits was that Dr. Rupp took Mr. Thurmond off work for two days

---

[1] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

and gave him a five-pound lifting restriction for two weeks. *Id.* at 8. However, the Court finds that is not enough to render either visit necessary, particularly given that Mr. Thurmond was not employed at the time. Furthermore, even assuming the treatment was necessary, Mr. Thurmond did not offer any proof as to the reasonableness of the medical bills incurred.

In sum, Mr. Thurmond has not established that emergency care was reasonable or necessary for treatment of his work-related injury. Therefore, the Court must deny his request for payment at this time.

### Temporary Disability Benefits

Tennessee law provides that an employer must pay temporary disability benefits until the employee reaches maximum medical improvement so long as the employee can prove an inability to work due to a compensable injury. *Simpson v. Satterfield,* 564 S.W.2d 953, 955 (Tenn. 1978); *see also Gray v. Cullom Machine Tool and Dye, Inc.,* 152 S.W.3d 439 (Tenn. 2004); *Gluck Brothers, Inc. v. Coffey,* 431 S.W.2d 756 (Tenn. 1968). An employee is entitled to receive temporary partial disability benefits, pursuant to Tennessee Code Annotated section 50-6-207(2) (2014), when "the temporary disability is not total." *Stem v. Thompson Servs.,* No. M2010-01566-WC-R3-WC, 2011 Tenn. LEXIS 742, *27 (Tenn. Workers' Comp. Panel July 26, 2011). Tennessee Code Annotated section 50-6-207(2)(A) (2014) provides that, "In all cases of temporary partial disability, the compensation shall be sixty-six and two-thirds percent (66 2/3 %) of the difference between the average weekly wage of the worker at the time of the injury and the wage the worker is able to earn in the worker's partially disabled condition."

The parties agree that from December 7, 2014, until February 20, 2015, Mr. Thurmond worked for Yates and received his full salary, except for Christmas break when the Nissan plant where he worked experienced its regular shutdown. Thus, Mr. Thurmond would not be entitled to any temporary disability benefits during this time.

The parties also agree Mr. Thurmond resigned from his employment with Yates on February 20, 2015. However, Mr. Thurmond asserts he did so only because he believed he was incapable of performing his regular job duties because of the work-related injury to his neck and trapezius muscles. He further asserts his physical condition has not significantly changed since his resignation.

"The testimony of the employee as to his or her physical limitations must always be taken into consideration." *Lambdin v. Goodyear Tire & Rubber Co.,* No. W2013-01597-SC-WCO-WC, 2015 Tenn. LEXIS 94, *30 (Tenn. S. Ct. Jan. 29, 2015). However, "a subjective belief is not a reasonable basis upon which to award disability benefits." *Kelly v. D & S Residential Holdings,* No. 62011-02392-WC-R3-WC, 2012 Tenn. LEXIS 632, *30 (Tenn. Workers' Comp. Panel Sept. 4, 2012).

8

In this instance, three doctors have opined that Mr. Thurmond could return to full duty with Yates with no restrictions on his physical activity. Dr. Walker gave this opinion on February 6. (Ex. 1 at 8.) Dr. Woodall agreed with Dr. Walker on February 10, when he also released Mr. Thurmond back to work with Yates at full duty. (Ex. 1 at 10.) On May 7, Dr. Speake determined Mr. Thurmond was at MMI with no functional limitations. (Ex. 2 at 5, 6.)

Mr. Thurmond also testified he suffered an exacerbation of his neck pain on May 7, while using an exercise bike during therapy. On May 15, Dr. Rupp at Vanderbilt took Mr. Thurmond off work for two days and placed him on a five-pound overhead lifting restriction for two weeks. (Ex. 3 at 4-8.) These restrictions may have been sufficient to entitle Mr. Thurmond to temporary disability benefits; however, the disability, whether it is temporary total or temporary partial, must be more than seven days before an employer is required to pay benefits. Tenn. Code Ann. § 50-6-205(a) (2014).

Dr. Rupp only took Mr. Thurmond completely off work for two days; thus, he was temporarily totally disabled during that time. However, he could only receive temporary total disability benefits if he remained disabled for more than seven days. He would not be entitled to temporary total disability benefits unless the five-pound lifting restriction entitled him to temporary partial disability benefits. *Id.* This would only be true if the restriction would have prevented him from working at Yates.

As noted earlier, Yates was able to accommodate similar restrictions from December 2014 until February 2015. (*See* Ex. 1 at 3, 6.) Mr. Thurmond offered no evidence to prove Yates could not have accommodated Dr. Rupp's restrictions. The Court finds that, had it not been for Mr. Thurmond's voluntary resignation on February 20, Yates would have accommodated any restrictions caused by the exacerbation on May 7. As a result, Mr. Thurmond's resignation, not his injury, caused his temporary partial disability.

Mr. Thurmond has not offered any medical proof to establish he was unable to perform his job duties at Yates and to justify his resignation on February 20, 2015. Given the weight of the medical evidence, Mr. Thurmond's subjective belief that he was unable to perform those duties is insufficient to establish his entitlement to temporary disability benefits. Therefore, the Court finds Mr. Thurmond has not established he is entitled to any temporary disability benefits, and his request must be denied.

**IT IS, THEREFORE, ORDERED** as follows:

1. Yates or its workers' compensation carrier shall authorize additional medical care as required by Tennessee Code Annotated section 50-6-204 (2014) for Mr. Thurmond for his work-related injury with Dr. Speake. Should Dr. Speake refuse to see Mr. Thurmond, Yates shall provide him with a panel of physicians from

which he may choose another authorized physician. Mr. Thurmond or the medical providers shall furnish medical bills to Yates or its workers' compensation carrier.

2. Mr. Thurmond's request for payment of Vanderbilt emergency room bills is denied. At this time, Mr. Thurmond has not come forward with sufficient evidence from which this Court may conclude he is likely to prevail at a hearing on the merits on this issue.

3. Mr. Thurmond's request for temporary disability benefits is denied. At this time, Mr. Thurmond has not come forward with sufficient evidence from which this Court may conclude he is likely to prevail at a hearing on the merits on this issue.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED THIS THE 14TH DAY OF AUGUST, 2015.**

**Robert Durham**
**Judge**
**Court of Workers' Compensation Claims**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Court Clerk may submit the record to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order for Medical Benefits was sent to the following recipients by the following methods of service on this the 14th day of August, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Tommy Thurmond | | | X | Tommythurmond@yahoo.com |
| John R. Rucker, Jr. | | | X | jrucker@ruckerlaw.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

12